UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Antwane Cottman, | Case No. 21-cv-2393 (SRN/TNL) |
| Petitioner, | |
| v. | REPORT & RECOMMENDATION |
| Warden J. Fikes, | |
| Respondent. | |

Antwane Cottman, Reg. No. 63164-037, FCI Sandstone, P.O. Box 1000, Sandstone, MN 55072 (pro se Petitioner); and

Adam J. Hoskins and Ana H. Voss, Assistant United States Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondent).

# I. INTRODUCTION

This matter comes before the Court on Petitioner Antwane Cottman's petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See generally* Pet., ECF No. 1. This matter has been referred to the undersigned for a report and recommendation to the Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons discussed below, the Court recommends that this matter be dismissed without prejudice for lack of subject-matter jurisdiction.

# II. BACKGROUND

Petitioner is serving a 180-month term of imprisonment for conspiracy to distribute heroin resulting in bodily injury in violation of 21 U.S.C. § 846 imposed by the

1

United States District Court for the Western District of Virginia.  Pet. at 1; Decl. of Heather Kensy ¶ 13, ECF No. 8; Ex. B to Kensy Decl., ECF No. 8-2 at 2.  Petitioner is currently incarcerated at the federal correctional institution located in Sandstone, Minnesota ("FCI Sandstone"), and has a projected release date of March 14, 2029.  *Find an inmate*, Fed. Bureau of Prisons, *available at* https://www.bop.gov/inmateloc//.

### A. Greatest Severity Public Safety Factor ("PSF")

The Federal Bureau of Prisons ("BOP") "designate[s] and classifie[s inmates] according to their security level and custody level."  Kensy Decl. ¶ 4; *see* Ex. A to Kensy Decl., ECF No. 8-1 at 25.  The BOP scores an inmate on a form "designed to evaluate factors the BOP has determined affect the level of supervision an inmate needs while incarcerated."  Kensy Decl. ¶ 6.  Such factors include, for example, "whether the inmate has a detainer, the severity of the inmate's current offense, whether the inmate has a history of violence or receiving disciplinary reports, and program participation."  Kensy Decl. ¶ 6.  "The sum of the points in each category typically determines the inmate's custody and security levels."  Kensy Decl. ¶ 6.

As part of this scoring process, "[e]ach inmate is assessed 0 to 7 points based on the severity level of their current offense."  Kensy Decl. ¶ 7; *see* Ex. A to Kensy Decl., ECF No. 8-1 at 27-28.  "Inmates with greatest severity offenses are awarded 7 points."  Kensy Decl. ¶ 8.  "When an inmate is assigned a greatest severity offense, the inmate will also be assessed a Greatest Severity PSF, which requires the inmate to be housed in at

least a [l]ow security facility, unless the PSF has been waived."[1]  Kensy Decl. ¶ 11; *see also* BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 18.  The BOP "consider[s] all of the documents available in the inmate's Central File, including, but not limited to, the inmate's Judgment and Commitment Order, Statement of Reasons, and Presentence Investigation Report ('PSR') prepared by the U.S. Probation Office to aid the court in sentencing the inmate."  Kensy Decl. ¶ 12.

Petitioner was given a greatest-severity offense rating because his offense "involved 90 kilograms of heroin" and "serious bodily injury resulting from the use of heroin," namely, five "non-fatal overdoses."  Kensy Decl. ¶¶ 19, 21; *see* Kensy Decl. ¶¶ 14-15.  As a result, Petitioner has a Greatest Severity PSF.  Pet'r's Ex. 3, ECF No. 1-3 at 1; Ex. C to Kensy Decl., ECF No. 8-3 at 1.

### B.  Home Confinement Under the CARES Act

In late March 2020, the then Attorney General issued a memorandum to the BOP, "prioritizing home confinement as an appropriate response to the COVID-19 pandemic." *Holt v. Warden*, 539 F. Supp. 3d 1005, 1007 (D. S.D. 2021); *see generally* Pet'r's Ex. 2, ECF No. 1-2; Ex. D to Kensy Decl., ECF No. 8-4.

"In response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Public Law No. 116-136, 134 Stat. 281 (2020)."  *Holt*, 539 F. Supp. 3d at 1007.  The CARES Act "expanded the BOP's discretion to increase the maximum amount of time that a prisoner may spend in home

---

[1] "A [PSF] is relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures to be employed to ensure the safety and protection of the public."  BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 18.

confinement." *Id.* (citing 134 Stat. 516). The then Attorney General subsequently "exercised emergency authority under . . . the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations." *United States v. James*, No. 15-cr-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020) (citation omitted); *accord United States v. Brown*, 12-cr-172(3) (SRN), 2020 WL 1922567, at *2 (D. Minn. Apr. 21, 2020); *see generally* Ex. E to Kensy Decl., ECF No. 8-5.

In June 2020, the BOP denied Petitioner home confinement under the CARES Act "because he did not have COVID risk factors and had not served 50% of his sentence or 25% with less than 18 months until release." Kensy Decl. ¶ 36; *see also* Pet'r's Ex. 4, ECF No. 1-4 at 1.

### III. ANALYSIS

Petitioner asks that the BOP be ordered to (1) remove the Greatest Severity PSF, which he contends is precluding him from being housed in a lower-security facility or placed in home confinement, and (2) (re)consider placing him in home confinement under the CARES Act "or any available statute" as "[t]he BOP exceeded its statutory authority and violated [f]ederal [l]aw by denying" him home confinement and the failure to do so amounts to a violation of the Eighth Amendment. Pet. at 1. Respondent asserts that this matter should be dismissed for lack of subject-matter jurisdiction.

#### A. Required Challenge to Fact or Duration of Confinement

"A district court may grant a writ of habeas corpus only if the petitioner 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Blocher*

4

*v. Eischen*, No. 22-cv-678 (PJS/DTS), 2022 WL 17406549, at *3 (D. Minn. Nov. 3, 2022) (quoting 28 U.S.C. § 2241(c)(3)), *petition denied*, 2022 WL 17404447 (D. Minn. Dec. 2, 2022). "Habeas corpus is used to challenge 'the fact or duration of . . . physical confinement itself.'" *Johnson v. Birkholz*, No. 21-cv-2017 (PJS/LIB), 2022 WL 3135304, at *1 (D. Minn. Aug. 5, 2022) (alteration in original) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973)). "When a prisoner is not challenging either the fact or the duration of his confinement, habeas is not the proper remedy, and the court lacks jurisdiction over his claims." *Id.* (citing *Spencer v. Haynes*, 774 F.3d 467, 469-71 (8th Cir. 2014); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam)). "The question at the outset is whether [Petitioner] has a claim for which habeas relief is available." *Blocher*, 2022 WL 17406549, at *3; *see Kruger*, 77 F.3d at 1073 ("The prisoner's label cannot be controlling.").

### B. No Jurisdiction Over Petitioner's Custody Classification

Petitioner requests that the Court direct the BOP to consider removing the Greatest Severity PSF custody classification because it "precludes [him] from being 'free from restraint' and causes [him] to be housed in quarters 'qualitatively different' from a minimum security camp and home confinement." Pet. at 1. Petitioner asserts that, "[w]ithout the addition of the [Greatest Severity PSF, he] would reside in a [m]inimum security [c]amp and could work [o]utside the walls of a prison." Pet. at 7 (quotation omitted). Petitioner asserts that, by giving him a Greatest Severity PSF, the BOP exceeded its statutory authority under 18 U.S.C. § 3621(b); acted contrary to the requirements of Program Statement 5100.08, governing inmate security and custody

5

classification; and violated his constitutional rights. While recognizing that the BOP "has [b]road [d]iscretion in determining where to designate prisoners and [their] security classification under 18 U.S.C. § 3621(b)," Petitioner asserts that the BOP's "exercise of this discretion must be reasonable" and "within the prescribed parameters of its statutory authority." Pet. at 8.

First, the Eighth Circuit Court of Appeals has held that district courts do not have jurisdiction over habeas petitions challenging BOP custody classifications. *Pollock v. Marske*, No. 21-2570, 2022 WL 1218640, at *1 (8th Cir. Apr. 26, 2022) (per curiam).

Second, although phrased as a challenge to the BOP's Greatest Severity PSF classification, Petitioner is essentially challenging the *place* of his confinement, i.e., if not for the Greatest Severity PSF, Petitioner would be eligible for other, less restrictive places of imprisonment. *See Frohlich v. United States*, No. 20-cv-2692 (PJS/HB), 2021 WL 2531188, at *2 (D. Minn. June 21, 2021) ("[W]hether a § 2241 petition can be used to challenge a petitioner's confinement in light of the conditions of his confinement must depend on the substance, and not merely the form, of the claim asserted by the petitioner."). "Petitioner attacks his classification designation because it allegedly precludes his desired change in the conditions of his confinement." *Kern v. Fikes*, No. 21-cv-2211 (WMW/LIB), 2022 WL 2959973, at *3 (D. Minn. June 16, 2022), *report and recommendation adopted*, 2022 WL 2953933 (D. Minn. July 26, 2022). As such, Petitioner's challenge is "directed at a condition of and not the initial conviction leading to nor the length of [his] continued confinement." *Pollock v. Kallis*, No. 20-cv-0359 (DSD/BRT), 2021 WL 3476627, at *4 (D. Minn. Apr. 6, 2021), *report and*

6

*recommendation adopted*, 2021 WL 2710013 (D. Minn. July 1, 2021), *aff'd sub nom. Pollock v. Marske*, No. 21-2570, 2022 WL 1218640 (8th Cir. Apr. 26, 2022) (per curiam); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (describing "prisoner classification" as a condition of confinement and stating "Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081 [(classification and treatment of prisoners)], and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process"). As stated above, "[w]hen a prisoner is not challenging either the fact or the duration of his confinement, habeas is not the proper remedy, and the court lacks jurisdiction over his claims." *Johnson*, 2022 WL 3135304, at *1.

Nor are placement decisions by the BOP subject to judicial review. "The BOP has the exclusive authority to determine where an inmate will serve his sentence." *Blocher*, 2022 WL 17406549, at *3 (citing 18 U.S.C. § 3621(b)); *see, e.g.*, *Henny v. Starr*, No. 22-cv-1996 (WMW/JFD), 2022 WL 18215862, at *1 (D. Minn. Nov. 8, 2022) ("[F]ederal law is absolutely clear that full discretion concerning custodial placement decisions is vested in the BOP, including decisions whether to transfer a prisoner to home confinement."), *report and recommendation adopted*, 2023 WL 146268 (D. Minn. Jan. 10, 2023); *Garcia v. Eischen*, No. 22-cv-444 (SRN/BRT), 2022 WL 4084185, at *2 (D. Minn. Aug. 16, 2022) ("Courts in this District have continually held that the BOP has the exclusive authority to determine the placement of prisoners." (citing cases)), *report and recommendation adopted*, 2022 WL 4080751 (D. Minn. Sept. 6, 2022); *see also Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006) ("There is no question that § 3621(b)

7

provides the BOP with broad discretion to choose the location of an inmate's imprisonment."). Under 18 U.S.C. § 3621(b), the BOP "shall designate the place of the prisoner's imprisonment" subject to a number of considerations," including but not limited to "the nature and circumstances of the offense." BOP Program Statement 5100.08 provides guidelines for BOP staff to make custody classification decisions which in turn "influence[] the inmate's place of imprisonment under § 3621(b)." *Kern*, 2022 WL 2959973, at *7. Section 3621(b) expressly states that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." *See United States v. Vang*, No. 16-cr-277 (DWF/KMM), 2020 WL 4704875, at *2 (D. Minn. Aug. 13, 2020) ("Courts have consistently held that placement questions are not reviewable."); *see also, e.g.*, *United States v. Murchison*, 865 F.3d 23, 28 n.8 (1st Cir. 2017) ("Determinations as to classification of prisoners and eligibility to participate in certain programs are left to the BOP, not the courts.").[2]

---

[2] Indeed, the BOP's assignment of a Greatest Severity PSF to Petitioner as part of the classification process "falls well within the discretion granted by Congress to the BOP and within the discretion given to BOP employees in making classification decisions under [Program Statement] 5100.08." *Aldaco v. Holder*, No. 10-cv-590 (JRT/LIB), 2011 WL 825624, at *11 n.5 (D. Minn. Jan. 7, 2011), *adopting report and recommendation*, 2011 WL 839388 (D. Minn. Mar. 7, 2011). Under § 3621(b), Congress granted the BOP the authority to "designate the place of the prisoner's imprisonment," taking into account, among other things, "the nature and circumstances of the offense." *See Aldaco*, 2011 WL 825624, at *11 n.5.

      Consistent with this statutory authority, the BOP created Program Statement 5100.08. BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 3 ("The [BOP's] classification, designation and redesignation procedures are consistent with the statutory authority contained in 18 U.S.C. § 3621(b)."); *see Aldaco*, 2011 WL 825624, at *11 n.5. Program Statement 5100.08 directs BOP staff to consider the severity of the current offense and assign an appropriate number of points. BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 27. The number of points is to "reflect the most severe documented instant offense behavior." BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 27; *see also* BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 28 (directing that more severe offense documented be used for classification rather than lesser offense pled to). Assault, which is defined as "serious bodily injury intended or permanent or life threatening bodily injury resulting," is classified as a "Greatest Severity" offense. BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 46. A drug offense where "[t]he offender was part of an organizational network and he or she organized or maintained ownership interest/profits from *large-scale* drug activity" and the amount of heroin involved is "greater than or equal to 2,000 gm, 2K, or 4.4 lb[s]" is also classified as a "Greatest Severity" offense. BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 46.

Moreover, "[j]udicial review of agency actions made pursuant to 18 U.S.C. § 3621, including actions made under [BOP Program Statement] 5100.08, is foreclosed under 18 U.S.C. § 3625 . . . ." *Aldaco*, 2011 WL 825624, at *11. Section 3625 states that the avenues for judicial review available under the Administrative Procedure Act "do not apply to the making of any determination, decision, or order under this subchapter." *See Aldaco*, 2011 WL 825624, at *11 ("The provisions of the Administrative Procedure Act . . . cited by 18 U.S.C. § 3625 set forth the procedures that govern judicial review of agency action, rulemaking and adjudication."); *see also Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("The plain language of this statute specifies that the judicial review provisions of the [Administrative Procedure Act], 5 U.S.C. §§ 701-706, do not apply to 'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621-3624."). "Other Courts in this District have reached similar conclusions finding that 18 U.S.C. § 3625 precludes judicial review of BOP discretionary decisions under § 3621, including

---

Petitioner asserts that he pled guilty and was sentenced to a drug offense involving an amount of heroin *less than* 2,000 grams. Pet. at 7. In contrast, Respondent notes that the presentence report indicated that Petitioner "concurred with the agreed statement of facts which stated he distributed at least 90 kilograms of heroin"—far exceeding 2,000 grams. Kensy Decl. ¶ 15. In the end, however, the quantity of heroin is not particularly important here as the BOP acknowledges that Petitioner was "only a supervisor in the conspiracy, not a leader," and therefore a "Greatest Severity" designation was not warranted on that basis. Kensy Decl. ¶ 20; *see also* Kensy Decl. ¶ 16 (Petitioner "was a supervisor of less than five participants").

Recall, however, that Program Statement 5100.08 directs that the number of points for the severity of the offense should "reflect the most severe documented instant offense behavior." BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 27. Petitioner was convicted of a drug offense resulting in serious bodily injury, and the presentence investigation report noted that he "had direct participation in the distribution of the heroin that resulted in five non-fatal overdoses." Kensy Decl. ¶ 15; *see also* Kensy ¶ 14 ("[T]he conspiracy in which [Petitioner] was a part of was responsible for five non-fatal overdoses."). As stated above, assault, which is a "Greatest Severity" offense, includes conduct involving "serious bodily injury intended or permanent or life threatening bodily injury resulting." BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 46. The BOP therefore equated Petitioner's offense conduct with assault and classified it as a "Greatest Severity" offense. Kensy Decl. ¶ 21; *see* BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 53 ("Offenses not listed will be assigned a severity category according to the most comparable listed offense."), ("Total offense behavior is to be considered, utilizing the most serious offense or act committed."). Because Petitioner's offense conduct involved a "Greatest Severity" office, he was given a Greatest Severity PSF. BOP Program Stmt. 5100.08, Ex. A to Kensy Decl., ECF No. 8-1 at 18.

the Greate[st] Severity PSF designation under Program Statement 5100.08." *Kern*, 2022 WL 2959973, at *8 (citing cases); *see also, e.g.*, *Shah v. Samuels*, 121 F. Supp. 3d 843, 847 (E.D. Ark. 2015); *Brown v. Holder*, 770 F. Supp. 2d 363, 365-66 (D. D.C. 2011).

Third, "[i]t is . . . well-established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement." *James*, 2020 WL 1922568, at *2 (citing cases); *accord Brown*, 2020 WL 1922567, at *3. Nor do they have a constitutionally protected interest in their security level or custody classification. *Rush v. Samuels*, 82 F. Supp. 3d 470, 485 (D. D.C. 2015); *see also Moody*, 429 U.S. at 88 n.9; *Belt v. Fed. Bureau of Prisons*, 336 F. Supp. 3d 428, 438 n.2 (D. N.J. 2018). With no constitutionally protected interest, there can be no deprivation of such an interest, let alone a deprivation "impos[ing an] atypical and significant hardship on [Petitioner] in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *cf. Smith v. Warden*, 519 F. App'x 673, 674 (11th Cir. 2013) (per curiam) (denial of placement in less-secure prison did "not amount to an 'atypical' or 'significant hardship'").

As Petitioner's challenge to his Greatest Severity PSF custody classification does not concern the fact or duration of his confinement, such a claim cannot be brought in a habeas petition pursuant to § 2241.

### C. No Jurisdiction Over CARES Act Home-Confinement Determination

Petitioner asserts that he "completely qualifies" for home confinement under the CARES Act and requests that the Court direct the BOP to (re)consider placing him in home confinement based on certain medical conditions that place him at greater risk for

severe illness from COVID-19. Pet. at 5. Petitioner asserts that the BOP violated federal law by not recognizing these medical conditions as well as "the Ex Post Facto clause" by considering whether he had served 50% of his sentence when evaluating him for home confinement under the CARES Act. Pet. at 5. For the same reasons that the Court lacks jurisdiction over Petitioner's challenge to his Greatest Severity PSF custody classification, the Court lacks jurisdiction over Petitioner's challenge to the BOP's decision to deny him home confinement under the CARES Act.

The CARES Act "merely give[s] eligible inmates the possibility to be considered for home confinement." *James*, 2020 WL 1922568, at *2; *accord Brown*, 2020 WL 1922567, at *2. It does not alter the BOP's exclusive authority to determine the placement of prisoners. *Vang*, 2020 WL 4704875, at *2; *see also, e.g.*, *Henny*, 2022 WL 1825852, at *1 ("The CARES Act did not disturb this grant of discretion to the BOP."). As explained by the Eighth Circuit, "[t]he recently passed CARES Act permits the . . . BOP to extend the period of home confinement permitted under [18 U.S.C.] § 3624(c)," but, "[b]ecause these statutes give authority to place a prisoner in home confinement to . . . the BOP, not the [courts]," court do "not have authority to change [a prisoner's] place of imprisonment to home confinement under § 3624(c)(2)." *United States v. Houck*, 2 F. 4th 1082, 1085 (8th Cir. 2021); *see also Vang*, 2020 WL 4704875, at *3 ("[B]ecause release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate."). "Federal courts lack the authority to order that a prisoner be placed at a specific facility or home confinement, or direct the BOP to make such a placement decision itself." *Gorski v. Starr*, No. 22-cv-2346 (WMW/TNL), 2022

WL 18135249, at *2 (D. Minn. Dec. 8, 2022), *report and recommendation adopted*, 2023 WL 112704 (D. Minn. Jan. 5, 2023).

In any event, "even if [Petitioner] could plead that []he is entitled to home confinement under the CARES Act (or to administrative reconsideration of h[is] request), the claim would not be appropriately raised through a habeas petition." *Gorski*, 2022 WL 18135249, at *2. "Home confinement is not the end of confinement, but a transfer to another place of confinement. It is a change in the *conditions* of confinement. An inmate on home confinement is still serving a sentence and is in confinement while doing so." *Craft v. Birkholz*, No. 21-cv-1917 (MJD/JFD), 2022 WL 18359162, at *2 (D. Minn. Oct. 20, 2022), *report and recommendation adopted*, 2023 WL 275160 (D. Minn. January 18, 2023). As such, "[h]ome confinement is not release from custody . . . ; it is simply one of several forms of BOP custody." *Johnson*, 2022 WL 3135304, at *1; *see, e.g.*, *James*, 2020 WL 1922568, at *2 ("Home confinement is a place of confinement."); *Brown*, 2020 WL 1922567, at *3 (same); *see also Williams*, 2021 WL 4155013, at *6 n.6 ("Home confinement is a place of confinement or imprisonment; to hold otherwise would upend a plethora of well-established Eighth Circuit precedent."). "A legal action seeking transfer from one form of BOP custody to another (like a legal action seeking transfer from one BOP facility to another) is not a challenge to the fact or duration of confinement." *Johnson*, 2022 WL 3135304, at *1; *accord Gorski*, 2022 WL 18135249, at *2. "[Petitioner's] claim that []he is entitled to release on home confinement (or, at a minimum, entitled to reconsideration of the decision not to be released on home confinement) has nothing to do either with the validity of h[is] conviction or with the

12

length of h[is] detention." *Gorski*, 2022 WL 18135249, at *2.

Nor is there any basis for an Ex Post Facto violation. "The Ex Post Facto Clause forbids enactment of a 'law that *changes the punishment*, and inflicts *a greater punishment*, than the law annexed to the crime, when committed." *Zink v. Lombardi*, 783 F.3d 1089, 1107 (8th Cir. 2015) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 516 (1995) (Stevens, J., dissenting) (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798))). "[A]fter the [then] Attorney General issued [his] directives on March 26 and April 3, 2020, the BOP changed its protocols and instead required inmates to have served at least 50 percent of their sentences in order to be eligible for home confinement." *United States v. Reddy*, No. 13-CR-20358, 2020 WL 2320093, at *3 (E.D. Mich. May 11, 2020) (quotation omitted); *see* Kensy Decl. ¶ 34; *see generally* Ex. F to Kensy Decl., ECF No. 8-6. Petitioner asserts that, because the April 3, 2020 memorandum issued by the then Attorney General did "not set out a specific amount of an inmate[']s sentence that must be served," the subsequent inclusion of a 50%-sentence-served factor "disturbed his [s]ettled [e]xpectations in violation of the Ex Post Facto Clause." Pet. at 5 (internal quotation marks omitted).

As stated above, Petitioner does not a have a constitutional right to a particular place of confinement and the CARES Act did not alter the BOP's exclusive authority to determine the placement of prisoners. Nor did the inclusion of a 50%-sentence-served factor "render[ Petitioner's] sentence more punitive." *Giannini v. Fed. Bureau of Prisons*, No. 09-cv-1166 (JMR/JSM), 2010 WL 1427318, at *13 (D. Minn. Feb. 12, 2010), *report and recommendation adopted*, 2010 WL 1427320 (D. Minn. Apr. 9, 2010);

*see also, e.g.*, *Seacrest v. Gallegos*, 30 F. App'x 755, 756 (10th Cir. 2002) ("[T]he BOP did not violate the Ex Post Facto Clause because the decision did not affect the legal definition of the crime Mr. Seacrest committed or increase his punishment."); *Kyles v. Chester*, No. 11-3006-RDR, 2011 WL 830540, at *6 (D. Kan. Mar. 2, 2011) ("Even if petitioner could show retrospective application, he has not demonstrated how the BOP's decision either increased the legal consequences of his crime or increased the punishment for such crime."). "Petitioner's actual sentence has not increased." *Giannini*, 2010 WL 1427318, at *13; *see also Kyles*, 2011 WL 830540, at *6 ("The length of the sentence imposed by the court upon Mr. Kyles has not been increased.").

Therefore, because Petitioner's challenge to the denial of home confinement under the CARES Act likewise does not concern the fact or duration of his confinement, this claim also cannot be brought in a habeas petition pursuant to § 2241.

### D. Eighth-Amendment Claim Incognizable in § 2241 Petition

Petitioner's Eighth-Amendment claim is similarly incognizable in a habeas petition. "The Eighth Amendment's prohibition against cruel and unusual punishment 'imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.'" *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "When the condition of confinement at issue relates to a prisoner's medical condition, a prison official violates the Eighth Amendment by being deliberately indifferent *either* to a prisoner's *existing*

14

serious medical needs *or* to conditions posing a substantial risk of serious *future* harm." *Id.* (quotation omitted). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quotation omitted); *see also, e.g.*, *Shipp*, 9 F.4th at 703; *Washington v. Denney*, 900 F.3d 549, 559 (8th Cir. 2018); *Frohlich*, 2021 WL 2531188, at *3.

Petitioner asserts that the BOP was deliberately indifferent to his medical needs when it denied him home confinement under the CARES Act. Petitioner asserts that the BOP was aware that certain of his medical conditions, including obesity and liver disease, placed him at greater risk of contracting severe illness from COVID-19 based on a BOP bulletin listing these conditions and still denied him home confinement.[3] Petitioner asserts that the imposition of a mask mandate, modified operations at FCI Sandstone, transmission rates, and the possibility for a new infectious wave demonstrate that, by denying him home confinement, the BOP is disregarding an excessive risk to his health.

Petitioner is essentially asserting that the existence of the COVID-19 pandemic combined with his medical conditions renders any continued incarceration at FCI Sandstone to be per se deliberate indifference to his medical needs. *Kern*, 2022 WL 2959973, at *5. "The mere existence of the COVID-19 virus and Petitioner's alleged physical conditions[, however,] are alone insufficient to show that the BOP behaved

---

[3] To the extent Petitioner claims hypertension was listed in the bulletin issued by FCI Sandstone in March 2020 as a condition presenting a higher risk of serious illness or death from COVID-19, Pet. at 6, it was not. The bulletin, which Petitioner attached to his Petition, stated that "[p]eople with serious medical conditions such as HIV, weakened immune systems, moderate or severe asthma or other chronic lung conditions, undergoing treatment for cancer, morbidly obese, poorly controlled diabetes, or kidney or liver disease" were at a higher risk. Pet'r's Ex. 6, ECF No. 1-6 at 6.

unreasonably in response to the risks presented by the virus." *Id.* at *9 (quotation omitted). Similarly, "[t]he mere fact that COVID-19 spread at FCI Sandstone does not mean that the facility was deliberately indifferent." *Frohlich*, 2021 WL 2531188, at *3.

At bottom, "[Petitioner's] claim is in substance an ordinary conditions-of-confinement claim, and the Eighth Circuit holds that such claims cannot be brought in a § 2241 petitioner."[4] *Id.*; *see Spencer*, 774 F.3d at 468 ("Our precedent precludes conditions-of-confinement claims using the vehicle of a habeas petition."); *see also, e.g.*, *Williams*, 2021 WL 4155614, at *5-8. Thus, here too, because Petitioner's Eighth-Amendment challenge also does not concern the fact or duration of his confinement, this claim is not cognizable in a habeas petition under § 2241.

### E. Conclusion

In sum, "[e]ach of Petitioner's claims relates to the conditions of his confinement without attacking the validity of his sentence or the length of his custody." *Kern*, 2022 WL 2959973, at *3. Because Petitioner "is not challenging the fact or duration of his custody—that is, the legality of his detention—a writ of habeas corpus is not the correct

---

[4] In recognition of the liberal construction afforded to pro se pleadings, the Eighth Circuit has directed courts to give petitioners an option to convert their conditions-of-confinement habeas claim into a civil claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), thereby rectifying the procedural vehicle by which the claim is being asserted. *Spencer*, 774 F.3d at 471; *Mills v. Starr*, 21-cv-1335 (SRN/BRT), 2022 WL 4084178, at *6 n.10 (D. Minn. Aug. 17, 2022), *report and recommendation adopted*, 2022 WL 4080750 (D. Minn. Sept. 6, 2022). The Court finds it would be inappropriate to do so here. Fundamentally, Petitioner seeks to challenge discretionary decisions by the BOP, "which, as noted above, [are] unreviewable (and would remain unreviewable in a civil[-]rights action)." *Mills*, 2022 WL 4084178, at *6 n.10; *see Boyd v. Pollock*, No. 20-cv-1252 (ECT/LIB), 2021 WL 664139, at *5 (D. Minn. Jan. 29, 2021) (concluding "would be futile to permit Petitioner an opportunity to convert his habeas Petition to a civil action" where there was no "'viable' civil claim even if not attempted to be asserted in a habeas petition" (footnote omitted)), *report and recommendation adopted*, 2021 WL 663751 (D. Minn. Feb. 19, 2021); *see also, e.g.*, *Gorski*, 2022 WL 18135249, at *2 n.3; *Craft*, 2022 WL 18359162, at *3 n.4; *Garcia*, 2022 WL 4084185, at *3 n.4; *Kern*, 2022 WL 2959973, at *5 n.3. That Petitioner has couched his challenge to the BOP's denial of home confinement under the CARES Act in terms of the Eighth Amendment does not change the fact that the alleged deliberate indifference concerns a quintessential placement decision by the BOP over which it has exclusive authority.

remedy for the alleged violation of his rights." *Jorgensen v. Birkholz*, No. 20-cv-2349 (NEB/DTS), 2021 WL 2935641, at *1 (D. Minn. July 13, 2021), *appeal dismissed*, No. 21-2786, 2021 WL 6808428 (8th Cir. Sept. 27, 2021). Therefore, dismissal of Petitioner's habeas petition is warranted for lack of subject-matter jurisdiction.

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that this matter be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

Date: February 21, 2023

      *s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Cottman v. Fikes*
Case No. 21-cv-2393 (SRN/TNL)

### NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).